# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

LINDA MARIE SMITH,     )
                                  )
    Plaintiff,             )
                                  )
v.                                  )
                                  )    Case No. CV416-031
SAVANNAH METRO POLICE  )
DEPARTMENT,              )
*et. al.*,                         )
                                  )
    Defendants.         )

## REPORT AND RECOMMENDATION

Proceeding *pro se*, inmate-plaintiff Linda Marie Smith brings this 42 U.S.C. § 1983 civil rights action against the "Savannah Metro Police Department" and law enforcement officers. Doc. 1. The Court preliminarily reviews her Complaint under 28 U.S.C. § 1915A(a).[1] She

---

[1] The Prison Litigation Reform Act (PLRA) requires federal courts to conduct early screening of all suits filed by prisoners or detainees for the purpose of identifying claims that are subject to immediate dismissal because they are frivolous or malicious, fail to state a claim for relief, or seek monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915A (which applies to prisoner/detainee complaints against governmental entities or officials, whether plaintiff is proceeding IFP or has paid the filing fee); 28 U.S.C. § 1915(e)(2)(B) (imposing the same dismissal obligation as to any case filed IFP, whether by a prisoner/detainee or any other "person"); 42 U.S.C. § 1997e(c)(1) (imposing the same dismissal obligation as to "any action brought with respect to prison conditions"). On initial screening of a prisoner complaint, only "cognizable claims" may be allowed to proceed. 28 U.S.C. § 1915A(b). All three statutory provisions contemplate the

used a form § 1983 Complaint and, in the "Statement of Claim" section, she alleges (unedited, and in its entirety):

> On July 10, 2014, Sgt. Eaton answered a call for an intruder at 2020 Holiday Circle. After finding no intruder, Sgt. Eaton took a gun that was in a case putting it in his back pocket and walking outside. He was informed that the last use of the gun was 2013. On July 16, 2014, Sgt. Eaton returned with no search warrant kicking in my door bringing a raid team and K-9 dogs to the address. Leaving 2 warrants on the wall. 16-1-20 False statement (the intruder call on 7/10/14) and 16-5-60b reckless conduct (shooting a gun in my home at intruders. My house was robbed and I was raped. My keys were stolen in 2013. Last use of firearm again was 2013. Other officers saw the holes and ignored them. After examing the warrants the signatures were different, there was never a search warrant and he raided the address all based on an intruder call. Sgt. Haloford assisted Stg. Eaton by agreeing and providing him a letter from internal affairs saying he had probable cause for the arrest. Not the raid on the address. But I learned that Sgt. Haloford is not with internal affairs so the officer that day that interviewed and took my statements about the Sgt. Eaton taking my gun. Holes in the wall were old the last use was almost a year ago and other officers did nothing about what they saw. He made statements concerning an episode from 2010 when I had report an officer and he said "Today I'm the street supervisor."

Doc. 1 at 5.

That is the entirety of her claim. For "Relief" she writes (again, in its entirety, and unedited):

---

dismissal of non-cognizable claims prior to service of process upon any defendant. 28 U.S.C. § 1915A (requiring screening "before docketing if feasible or . . . as soon as practicable after docketing"); § 1915(e)(2) (requiring dismissal "at any time" the court determines the suit to be factually or legally insubstantial); § 1997e(c)(1) (requiring dismissal of insubstantial claims on the court's "own motion").

2

I like restitution for my salary missed for almost 2 years while being confined, pain, suffering, replacement of my door and carpet where he bought K-9 unit in my home. I'm sick. I am severely anemic. I found out and have other health issues since being confined. I would like those officers fired from Savanah Metro Police Department.

Doc. 1 at 6.

In a letter to the Clerk, construed here as a motion for leave to amend her Complaint,[2] Smith says (entirety and unedited):

> My name is Linda Marie Smith case no. CV416-031. I was just returning from IST and had a lot going on. I filed my case again but left out some important details that I included in CV915-[3] before being confined in another facility without my paperwork.
>
> First, it is a discrimination suit against the police department. I am writing in hopes that you will let me just re-write the body of the complaint the right way so a judge can tell it is a discrimination suit other than the form. Please attach the enclosed.
>
> My name is Linda Marie Smith. I am a 48 year old black nurse who was arrested on July 22, 2014. My complaint is that I was discriminated against by caucasian officers at the Savannah Metro Police Department which led to my arrest.
>
> I was raped and robbed and had been complaining to Savannah Metro police department that someone was breaking in my home. And that my keys were stolen in 2013. When caucasian officers would answer the calls for possible intruder they would enter and make strange remarks.

---

[2] This motion (doc. 5) is **GRANTED**.

[3] Smith last year filed *Smith v. Eaton*, CV415-209, but the Court dismissed it after she failed to comply with IFP filing requirements. *Id.*, doc. 8 (dismissing her case without prejudice).

3

When officer Johansen answered I had physical evidence on the scene she refused to take the evidence and I offered to bag and tag it for her. It was a full cup of solo pee lurine that the intruder left in my curio cabinet. She refused to call out someone to dust for prints and refused to take the cup or the urine. Her statement was, "You're going to thank us for saying you're insane."

One of the caucasian officers with her looked down at the floor and said, "I don't think you're crazy."

Another 911 call another set of caucasian officers answered and I showed them the cracks in plaster on the ceiling and the stairs by the attic. I also explained to them about the noises. The caucasian officer responded, "You have a fat rat on your attic and you need to call Richmond hill Pest Control." They laughed and left without ever securing the address.

Which led us up to Sgt. Eaton, Sgt. Dupuis on July 10, 2014. I recently returned from a travel contract in Florida and had an intruder call. St. Eaton before checking or saying he was going to check the attic statement was "Today I am the street supervisor." Walked to the attic and never secured it. Instead he became obsessed with my gun in the case and called St. Haloford from 2011 she had me committed to Georgia Regional Hospital and her statements on the scene was "You need help if you going to burn your house down." The fire chief cleared the fire prior to leaving. When I inquired by she said that she had no comment.

I have been sitting here in incarceration at Chatham County Jail since July 2014 for the collaboration of lies by these 3 caucasian officers and none of the 3 has came forward to clear me. I am filing a discrimination suit against the department for the actions of the caucasian officers who clearly were aware of my intruders but chose to harass and call me crazy instead of doing their jobs.

Thank you

Doc. 5 at 2-3.

To state a 42 U.S.C. § 1983 claim, Smith must plead that she was (1) deprived of a right; (2) secured by the Constitution or laws of the United States; and (3) that the alleged deprivation was committed under color of state law. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Rayburn v. Hogue*, 241 F.3d 1341, 1348 (11th Cir. 2001); *Archey v. City of Deerfield Beach, Florida*, 2016 WL 4376650 at * 2 (S.D. Fla. Aug. 17, 2016). Boiled down, plaintiff complains that white police discriminated against her, because of her race, when they arrested her. A lot more is required to plead such a claim, including surrounding context, the nature and circumstances of the arrest, etc. *See, e.g.*, *Vickers v. Georgia*, 567 F. App'x 744, 748 (11th Cir. 2014) (African American male arrestee's allegations regarding his own interactions with police officers and judicial system were insufficient to state 42 U.S.C. §§ 1981, 1983, and 1985 claims against State of Georgia, city, and county for routine practice and policy of targeting African American males on account of race and gender for increased enforcement of laws disproportionately to other races, since arrestee's citations to his own

interactions with officers and judicial system were not sufficient to allege generalized discriminatory policy).[4]

There are also hints of Fourth if not also Fifth Amendment claims, but only hints.

Of course, this Court cannot provide Smith with legal assistance. *See Kaiser v. Steele*, 2016 WL 1296388 at * 1 (11th Cir. April 4, 2016) (courts "will not act as . . . *"de facto* counsel" for litigants). It thus cannot research the law and plead supporting facts for her. *Boles v. Riva*, 565 F. App'x 845, 846 (11th Cir. 2014) ("[E]ven in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.") (quotes and cite omitted); *Sec'y, Fl. Dept. of Corr. v. Baker*, 406 F. App'x 416, 422 (11th Cir. 2010); *Swain v. Colorado Tech.*

---

[4] For that matter, Smith cannot sue the police department because it lacks legal capacity to be sued:

> Police departments are not usually considered legal entities subject to suit. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (dismissing claim against sheriff's department because department was not subject to suit under Alabama law); *see also McKinnie v. Boseman*, 2009 WL 3753989 at * 2 (S.D. Ga. Nov. 9, 2009); *Griffin v. Hillsborough County Sheriff's Dep't*, 2009 WL 4547054 at *2 (M.D.Fla. Nov.30, 2009) (same result under Florida law).

*Johnson v. Savannah Chatham Metropolitan Police Dept.*, 2010 WL 4790911 at * 2 (S.D. Ga. Oct. 19, 2010) (footnote omitted), cited in *Washington v. Chatham County Police Dept.*, 2015 WL 1951805 at * 1 (S.D. Ga. Apr. 28, 2015). Hence, that defendant must be dismissed on those grounds alone.

*Univ.*, 2014 WL 3012693 at * 1 (S.D. Ga. June 12, 2014) ("While Congress has chosen to provide indigents with access to the courts by way of its *in forma pauperis* statute, it has not funded a *pro se* support function. Judges, then, at most can construe liberally what *pro se* litigants say factually, but they cannot develop legal arguments or plug the legal holes in their cases for them.").

Normally, "when a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action." *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015); *Epps v. Hein*, 2016 WL 3208950 at * 4 (S.D. Ga. June 7, 2016); *see also* Fed. R. Civ. P. 15. But given the patent self-beffudlement evident in Smith's original and amended pleadings, the Court has no confidence that second-chance pleadings would bear any actionable fruit.

It would be a fair exercise of discretion, however, to dismiss her case without prejudice to her right to re-file it when she is able to ply a "short and plain statement" of a *coherent* claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). She need not "present every last detail" of her case, *Swain*, 2014 WL 3012693 at * 2, but she must give

"fair notice of what the . . . claim is and *the grounds upon which it rests.*" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (emphasis added). Those grounds must present the elements of each legal claim, and follow all procedural rules, including Fed. R. Civ. P. 8 & 10. *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007)) ("We construe *pro se* briefs liberally, but *pro se* litigants nonetheless must conform to procedural rules.").

To that end, Smith must remember that § 1983 claims are barred if not filed within two years after the cause of action accrues. *Mullinax v. McElhenney*, 817 F.2d 711, 715-16 n. 2 (11th Cir. 1987); *Williams v. City of Atlanta*, 794 F.2d 624, 626 (11th Cir. 1986) ("[T]he proper limitations period for all section 1983 claims in Georgia is the two-year period set forth in O.C.G.A. § 9-3-33 for personal injuries."). Accrual occurs "when the plaintiff has 'a complete and present cause of action,' *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98, 61 S.Ct. 473, 85 L.Ed. 605 (1941)), that is, when 'the plaintiff can file suit and obtain relief,' *Bay Area Laundry*, *supra*, at 201." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Smith is

8

otherwise free to advance another attempt to state a claim in her Fed. R. Civ. P. 72(b)(2) Objection to this Report and Recommendation.

Accordingly, the Court **GRANTS** Smith's motion to amend (doc. 5) but otherwise advises that her case be **DISMISSED WITHOUT PREJUDICE**.

Smith also is responsible for the filing fee in this case. To comply with the *in forma pauperis* statute, 28 U.S.C. § 1915(b)(2), the Court directed that she file a fully executed "Consent To Collection Of Fees From Trust Account" form. Doc. 3 at 4. She has failed to do so. However, she has submitted the also-ordered, "Prisoner Trust Fund Account Statement." Doc. 4. Too, the Court has received a total of $84 in partial payments toward her $350 filing fee debt.[5] That money more than covers the initial payment required by § 1915(b) (1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). *See* doc. 4 (her prison account statement balances). The Court will construe those payments as constructive "Consent," thus relieving her of her obligation to file a Consent form. In the meantime, her

---

[5] Normally, the Court first screens her case, as it is doing here, then directs the inmate's custodian to make scheduled payments. Inexplicably, payments have been streaming in since her Prison Trust Fund Account Statement was filed, doc. 4.

9

custodian (or designee) shall set aside 20% of all future monthly deposits to her account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.

Also, the Clerk is **DIRECTED** to send this Report and Recommendation (R&R) to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required for this, the financial directive portion of this R&R. In the event plaintiff is transferred to another institution, her present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from the plaintiff shall be collected by the custodian at her next institution in accordance with the terms of the payment directive portion of this Order.

**SO REPORTED AND RECOMMENDED**, this  24th  day of August, 2016.

_/s/ G. R. Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA